FULMER, Judge,
Concurring in part and dissenting in part.
I agree that this case should be reversed; however, I would reverse the trial *622 court’s ruling on the merits, not on the evidentiary issue alone, and remand with directions to the trial court to deny the motion to suppress.
The pertinent underlying facts of this case are detailed in the supreme court’s opinion entered after the first trial:
The victim’s body was found in an open field not far from her home. Her death was caused by two gunshot wounds to the head. The subsequent investigation revealed that someone had broken into her home and stolen some items of jewelry, her gun, and about $35. There was evidence that the victim had been raped before her death.
Grimshaw, who was the victim’s neighbor, soon became a suspect. After several interviews and a final interrogation lasting several hours, Grimshaw confessed his involvement in the crime. Although Grimshaw gave several inconsistent versions of events, he eventually admitted his involvement in the crime, but pointed to Ramirez as the ringleader.
In order to convince the police of the truthfulness of his statements regarding Ramirez’s involvement, Grimshaw phoned Ramirez from the station while the sheriffs detectives listened in and recorded the call. During the call, Ramirez and Grimshaw discussed the items of physical evidence related to the crime that were in Ramirez’s possession and made plans to destroy the victim’s automobile to eliminate evidence of the crime.
Ramirez was at home around three o’clock that afternoon when, shortly after the phone call, a sheriffs deputy arrived wearing a badge and carrying a firearm. The deputy asked Ramirez to produce the physical evidence in his possession linked to the murder, including the suspected murder weapon and some of the victim’s jewelry. According to the deputy, Ramirez was a “little hesitant at first, [and] denied having the articles.” After the deputy informed Ramirez that he knew about the phone conversation with Grimshaw, Ramirez turned over the items that were in the house and accompanied the deputy to retrieve other items. The deputy then asked Ramirez if he would be “willing to come with [him] to the sheriffs office” to speak with a detective. Once transported to the station, Ramirez was placed in a small room and questioned by two other detectives.
739 So.2d at 571-72. As noted by the majority herein, the supreme court reversed for a new trial in part because the officers who interviewed Ramirez at the station did not initially inform him of his Miranda rights and Ramirez’s confession was erroneously admitted at trial.
On the morning of the retrial, the defense moved to suppress evidence of the jewelry, a ring, that Detective Blum retrieved from Ramirez at his home before Ramirez was taken to the station. While the trial court was contemplating whether to hear the motion at that late date, the State did not move for a continuance; instead, the State and defense agreed to stipulate to the facts for the purpose of deciding the motion. During argument on the motion, the defense asked the court to consider additional testimony outside of the stipulation. The additional testimony requested included the original trial testimony of Detective Blum and the testimony of Detective Blum that was presented at a hearing on a motion to suppress which occurred before the first trial. The State initially objected but then agreed to stipulate to Detective Blum’s original trial testimony. The State did not expressly stipulate to the testimony of Detective Blum from the prior motion to suppress hearing.
*623 After considering the stipulated facts and Detective Blum’s original trial testimony as well as his testimony from the prior motion to suppress hearing, the trial court granted Ramirez’s motion to suppress in a written order concluding that “[t]he seizure of the ring from the defendant by Detective Blum was not a result of a free and voluntary consent by the defendant when the totality of the circumstances are examined.” The trial court’s order recites the following facts upon which the court relied in reaching this conclusion:
1. Detective Blum had been advised by other members of the Pasco County Sheriffs Office that Mr. Grimshaw, a co-perpetrator in the murder, had confessed to the murder in this cause and named the defendant as the co-perpetrator in the murder and who had possession of the victim’s three (3) stone ring, the victim’s handgun, and some handcuffs relating to the murder.
2. Detective Blum had further been advised that Grimshaw spoke to the defendant by telephone in which conversation the defendant admitted that he still had possession of the victim’s three stone ring, but that the gun and cuffs were with other individuals.
3. Detective Blum was directed by the Pasco County Sheriffs Office to recover the three stone ring from the defendant and pursuant thereto, Detective Blum arrived at the defendant’s residence at approximately 3:00 p.m. which was a short time after aforesaid Grim-shaw — defendant taped conversation.
4. Neither Detective Blum nor any other member of law enforcement attempted or received a search warrant.
5. The defendant was age seventeen years at the time.
6. The defendant was home alone when Detective Blum, Pasco County Sheriffs Office, arrived at the defendant’s home at approximately 3:00 p.m.
7. The defendant’s parents were neither at home nor accessible to the defendant.
8. Detective Blum, when he arrived at the defendant’s home was without a jacket and had his Pasco County Sheriffs Office badge visible on his belt along with his holstered firearm.
9. The defendant was hesitant, at first, when Detective Blum requested of him the victim’s three stone ring. The defendant initially denied knowledge of the ring.
10. Detective Blum then confronted the defendant with the knowledge that the law enforcement had done a telephone intercept and knew of the contents of the defendant’s conversation with Grimshaw a short time before, wherein the defendant told Grimshaw that he had possession of the victim’s ring, but that others had the gun and cuffs.
11. The defendant, upon being confronted with the aforesaid information, acceded to Detective Blum’s request for the ring and left the living room and entered his bedroom.
12. Detective Blum followed the defendant and kept him in sight for officer safety.
13. The defendant recovered the ring in question from his bedroom and gave it to Detective Blum.
The majority concludes that the trial court erred by considering the testimony of Detective Blum that was presented at the prior motion to suppress hearing. I agree because the State did not stipulate to this testimony. However, I cannot agree that the inclusion of this testimony rises to the level of harmful error warranting reversal in and of itself. Although the majority fails to identify the erroneously *624 included testimony or which findings of fact are based thereon, from my review of the record, it appears that the findings in paragraphs 8 and 9 of the trial court’s order are premised upon Detective Blum’s prior motion to suppress testimony, the entirety of which* only covers seven and one-half pages of transcript. I cannot-conclude that exclusion of these two findings would likely change the trial court’s ruling and, therefore, would not reverse on this evidentiary error. Nevertheless, I would still reverse because the facts as found by the trial court do not support the trial court’s ruling but rather indicate that the defendant voluntarily consented to turn over the victim’s ring to the officer.
The police are not prohibited from visiting a suspect’s home and requesting entry for the purpose of an investigation. See Younger v. State, 433 So.2d 636, 639 (Fla. 5th DCA 1983). Where there is a consensual encounter and no illegal detention, as in this case, the voluntariness of a consent to search must be established by the State by a preponderance of the evidence. See Taylor v. State, 28 Fla. L. Weekly S439, 2003 WL 21283161, — So.2d - (Fla.2003). Voluntariness is a question of fact to be determined from all of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The totality of the circumstances to be considered include factors such as whether the person was detained, whether the police used coercive questions, and what was the education, intelligence, and possible vulnerable subjective state of the person. See State v. McCord, 833 So.2d 828, 830 (Fla. 4th DCA 2002). A detective’s misrepresentations of the nature of the investigation may be evidence of coercion. Id.
Here, there was no detention and no evidence of intimidation or false misrepresentations to indicate coercion. Nor was there any allegation in Ramirez’s motion that he was subjected to any coercion. In fact, the motion was grounded on the contention that the ring was obtained without a warrant. The facts as found by the trial court indicate that Detective Blum engaged Ramirez in a consensual encounter. There was no indication that Detective Blum had drawn his gun, made any threats or given any overt demonstration of police authority. A reasonable person in Ramirez’s position would have felt free to terminate the encounter. See Taylor, 28 Fla. L. Weekly S439, — So.2d -. Although Ramirez was seventeen years of age, there is no evidence of any limitation to his education or intelligence or of any particular vulnerability. I would conclude that the stipulated facts show a voluntary consent to produce the ring and that the trial court erred in granting the motion to suppress based on these facts alone.